**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KIMBERLY YATES, ET AL.,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **NO. 06-1876** |
| **UNITED STATES OF AMERICA, ET** | : | |
| **AL.,** | : | |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM AND ORDER**

**Tucker, J.**                                                     **May ___, 2008**

Presently before this Court is Defendant United States of America's Motion for Partial

Summary Judgment (Doc. 21).  For the reasons set forth below, upon consideration of

Defendant's Motion, Plaintiffs' Response (Doc. 25), Defendant's Reply (Doc. 28), and Plaintiffs'

Sur Reply (Doc. 29), this Court will deny Defendant's Motion.

**BACKGROUND**

From the evidence of record, taken in a light most favorable to the Plaintiffs, the pertinent

facts are as follows.[1]  Plaintiffs Marleny Restrepo, Kimberly Yates, and Alicia Colon were

sexually assaulted by former Bureau of Prisons ("BOP") employee, Defendant Theodore E.

Woodson, while housed at the Federal Detention Center ("FDC")-Philadelphia.  Prior to

Woodson's sexual assaults on Restrepo, Yates, and Colon, Plaintiff Dana Ragsdale reported to

prison officials sexual contact between Woodson and a female inmate not a party to this case.

Plaintiff Ragsdale was an inmate at the FDC-Philadelphia from March 2003 to September

---

[1] As Defendant moves for summary judgment only as to Plaintiffs Dana Rasgdale and Marleny Restrepo's
claims, the Court will restrict its discussion of the facts accordingly.

2003.  While in custody, she learned that inmate Jeana Pavone had engaged in sexual activity with a prison guard who supervised the commissary.  Ragsdale did not report the sexual contact between Pavone and the prison guard to prison officials at the FDC-Philadelphia.

Instead, following her transfer to the Federal Correctional Institute (FCI)-Danbury in Danbury, Connecticut on September 6, 2003, Ragsdale reported the sexual contact to BOP Lieutenant Gussiak.  On November 20, 2003, Ragsdale, motivated in part by a desire to reduce her sentence, reported the sexual contact to Lieutenant Gussiak, and provided a physical description of the prison guard.  Lieutenant Gussiak informed Ragsdale that an investigation would be commenced.  On March 22, 2004, Ragsdale was contacted by Lieutenant Fox, an internal affairs investigator for the BOP.  Lieutenant Fox requested Ragsdale's affidavit.  Ragsdale supplied the requested affidavit, which outlined her knowledge of the sexual activity between Pavone and the prison guard.  Later, Ragsdale learned that following her initial report, the prison guard, subsequently identified as Woodson, assaulted several female inmates at the FDC-Philadelphia.  Ragsdale suffered an emotional breakdown, purportedly blaming herself for the assaults and triggering memories of her report of childhood sexual abuse by her grandfather.

Plaintiff Restrepo was an inmate at the FDC-Philadelphia from March 2003 to November 2004.  From September 2004 to October 2004, Restrepo was assigned to work in the FDC-Philadelphia's commissary.  All inmates working in the commissary were supervised by prison guards employed by the BOP, which group included Woodson.  During Restrepo's commissary assignment, Woodson made sexual advances toward Restrepo and the two engaged in multiple sexual acts.  These acts occurred in secluded areas of the commissary and an area known as "the warehouse."  Following an administrative investigation and criminal proceedings, Woodson

resigned from the BOP and pled guilty to sexual assault of several female inmates.

On November 4, 2005, Restrepo filed an Informal Resolution Form, in which she outlined instances of Woodson's sexual assault and claimed "monetary damages."  On November 8, 2005, a Correctional Counselor provided Restrepo with a "Tort Claim Form," which Restrepo did not complete.  On December 12, 2005, Restrepo's informal resolution request was denied as untimely due to her failure to complete the required internal administrative form within twenty days of the alleged incident.  On December 13, 2005, Restrepo appealed the denial of her claim to the Regional Administrative Office.  Restrepo's appeal described in more detail Woodson's sexual assaults and outlined her injuries, but did not include a claim for a specific monetary amount.  The Regional Administrative Office denied Restrepo's appeal.

On January 6, 2006, Restrepo mailed to the Federal Bureau of Prisons a letter, seeking to appeal the Regional Administrative Office's denial.  Restrepo's letter include a repetition of her injuries, but did not describe Woodson's sexual assault or make a claim for damages in any amount.  Restrepo, a native Spanish speaker, also made mention of her limited English language skills and complained that the administrative forms were not available in Spanish.  On February 22, 2006, four days before her scheduled release, Restrepo requested from prison officials a Standard Form 95 ("SF 95")[2], stating that her attorney had instructed her to complete the form. Prison officials were unable to locate a SF 95, and Restrepo made no further requests for same.

---

[2] The SF 95 is used to present claims against the federal government under the Federal Tort Claims Act for property damage, personal injury, or death allegedly caused by a federal employee's negligence or wrongful act or omission occurring within the scope of his or her employment.  The SF 95 requires, inter alia, a description of the event and injuries sustained and a claim for monetary damages in a sum certain. The SF 95 can be obtained from the relevant federal agency, by written request to the Department of Justice, or online on the Department of Justice's website. The completed form must be presented to the relevant federal agency within two years of the incident.

Plaintiffs Restrepo and Rasgdale, along with their co-plaintiffs Yates and Colon, assert claims against Defendant United States of America under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680; the Eighth Amendment; and <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).  Defendant now moves for partial summary judgement as to Restrepo and Ragsdale's FTCA claims.

## <u>LEGAL STANDARD</u>

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). <u>See</u> <u>Abramson v. William Patterson Coll. of N.J.</u>, 260 F.3d 265, 276 (3d Cir. 2001).  A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986); <u>Kreschollek v. Southern Stevedoring Co.</u>, 223 F.3d 202, 204 (3d Cir. 2000).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. <u>See</u> <u>Anderson</u>, 477 U.S. at 248.  The moving party "cannot simply reallege factually unsupported allegations contained in his pleadings."  <u>Clark v. Clabaugh</u>, 20 F.3d 1290, 1294 (3d Cir. 1994).  The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. <u>See</u> <u>Celotex v. Catrett</u>, 477 U.S. 317, 318 (1986); <u>Blackburn v. United Parcel Serv., Inc.</u>, 179 F.3d 81 (3d Cir. 1999).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question."

4

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. See Sound Ship Bldg. Co. v. Bethlehem Steel Co., 533 F.2d 96, 99 (3d Cir. 1976), cert. denied, 429 U.S. 860 (1976).  At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. See Anderson, 477 U.S. at 249. In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. See Wahl v. Rexnord Inc., 624 F.2d 1169, 1181 (3d Cir. 1980); Boyle v. Allegheny Pa., 139 F.3d 386, 393 (3d Cir. 1998).  The court must award summary judgment on all claims unless the non-moving party shows through affidavits or admissible evidence that an issue of material fact remains.  See, e.g., Koch Materials Co. v. Shore Slurry Seal, Inc., 205 F. Supp. 2d 324, 330 (D.N.J. 2002).

**DISCUSSION**

Defendant maintains that partial summary judgment is appropriate because: (1) Ragsdale lacks legal merit as she suffered no physical injury in connection with her FTCA claim for negligent infliction of emotional distress ("NIED"), and (2) Restrepo failed to fulfill the FTCA's jurisdictional prerequisite of presentment of an administrative tort claim.  The Court will deny Defendant's Motion as to both claims.  The Court will also dismiss the Bivens claims of all four Plaintiffs to the extent such claims are asserted against Defendant United States of America.

1.      **Plaintiff Ragsdale**

The FTCA waives the sovereign immunity of the United States for torts of federal employees acting within the scope of their employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).  Ragsdale brings a claim for NIED, a cognizable tort under Pennsylvania law.  See id.; Gould Elecs. Inc. v. United States, 220 F.3d 169, 179 (3d Cir. 2000) (stating that FTCA claims are assessed under the law of the state in which the alleged tortious act or omission occurred).  The tort of NIED has evolved primarily in the context of those who contemporaneously observed an injury occurring to a close relative and as a consequence of the shock were severely distressed.  Marchese v. Umstead, 110 F. Supp. 2d 361, 368 (E.D. Pa. 2000) (citing Armstrong v. Paoli Memorial Hosp., A.2d 605, 609 (Pa. Super. 1993)).  In the absence of allegations that the plaintiff witnessed an injury to a close family member, the plaintiff must show that the defendant breached a distinct pre-existing duty of care resulting in physical injuries to the plaintiff.  Marchese, 110 F. Supp. 2d at 368; Green v. Bryant, 887 F. Supp. 798, 801-802 (E.D. Pa. 1995); see also Corbett v. Morgenstern, 934 F. Supp. 680, 683 (E.D. Pa. 1996) (stating that the pre-existing duty must arise via contract or fiduciary duty) (citing Armstrong, A.2d at 615).  Instances of temporary fright and the like are not recoverable injuries for the tort of NIED.  Crivellaro v. Pennsylvania Power & Light Co., 491 A.2d 207 (Pa. Super. 1985).  NIED requires a manifestation of physical impairment resulting from the alleged emotional distress.  See Doe v. Philadelphia Cmty. Health Alternatives AIDS Task Force, 745 A.2d 25, 27-29 (Pa. Super. Ct. 2000) .

6

Defendant does not dispute that it owes a statutory duty to protect federal inmates from harm.  Defendant's Motion at 3; see also 18 U.S.C. § 4042(a)(2), (3) (mandating that the BOP provide for "the safekeeping, care and subsistence of all persons charged with or convicted of offenses against the United States" and "provide for the[ir] protection").  Defendant argues that Ragsdale's NIED claim lacks merit because she suffered no physical injuries as a result of Defendant's allegedly tortious conduct.  Ragsdale alleges that she suffered an emotional breakdown, and appends to her Response, an affidavit, dated March 17, 2008, attesting that she has suffered and continues to suffer from "intense anxiety manifested by sleeplessnes, fearfulness, hyperventilation, shortness of breath, heart palpitations, nightmares, weight gain, asthma, nervousness in everyday activities, fear of being alone," intermittent nausea and persistent colds.  Plaintiffs' Response at Exhibit 1.  Defendant urges the Court to disregard the affidavit, arguing that Ragsdale has not only provided information which contradicts her deposition testimony but has also merely listed the conditions which courts have found rise to the level of physical injuries in an effort to create a factual dispute.  Defendant's Reply at 6-7.

The Court finds that Ragsdale's deposition testimony and affidavit are not contradictory. A review of the portions of Ragsdale's deposition testimony provided by the parties reveals that Ragsdale discussed her emotional injuries related to triggering of memories of her reports of the sexual abuse by her grandfather and her development of asthma from an unknown source following her release from prison.  See Defendant's Reply at Exhibit 1; Plaintiffs' Sur Reply at Exhibit B.  While Ragsdale did not discuss her injuries in detail during the deposition, she did seek to explain that her distress was similar to the distress she experienced as a child when she reported the sexual abuse by her grandfather.  If Ragsdale does indeed suffer from the conditions

7

listed in her affidavit and these conditions resulted from Defendant's alleged negligence, then

there exists a general issue of material fact as to whether these conditions amount to physical

injuries under Pennsylvania law.  Lastly, the Court is mindful of Defendant's position regarding

Ragsdale's veracity, but the Court believes that Defendant's concerns may be adequately

addressed on cross-examination of Ragsdale.

### 2.      Plaintiff Restrepo

Defendant argues that Restrepo's failed to complete the administrative tort filing process,

which failure divests the Court of subject matter jurisdiction over Restrepo's claims.  Under the

FTCA, an "action shall not be instituted upon a claim against the United States for money

damages" arising from injury caused by the negligence, wrongful acts, or omission of any federal

government employee while acting in the scope of his employment unless the claimant has first

exhausted his administrative remedies.  28 U.S.C. § 2675(a); McNeil v. United States, 508 U.S.

106, 107 (1993).   The claimant must present his administrative tort claim to the appropriate

federal agency within two years of its accrual. 28 U.S.C. § 2401(b); Tucker v. United States

Postal Serv., 676 F.2d 954, 956 (3d Cir. 1982).  Presentment of an administrative tort claim to

the appropriate federal agency is a jurisdictional requirement which cannot be waived.  McNeil,

508 U.S. at 106, 111; Roma v. United States, 344 F.3d 352, 362 (3d Cir. 2003); Livera v. First

Nat'l State Bank of N.J., 879 F.2d 1186, 1194 (3rd Cir. 1989); Bialowas v. United States, 443

F.2d 1047, 1049 (3d Cir. 1971).  The presentment requirement is satisfied when the federal

agency receives from the claimant an executed SF 95 or other written notification of the incident

accompanied by a claim for money damages in a sum certain. 24 C.F.R. § 17.2; 28 C.F.R. §

14.2(a); see also See Roma, 344 F.3d at 362-63 (stating that the presentment requirement is

satisfied when the plaintiff "(1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claim" (quoting Tucker, 676 F.2d at 959)).  Presentment of an administrative tort claims provides the relevant federal agency with notice of the circumstances giving rise to the claim and allows the agency to respond by either settlement or defense of the claim.  Tucker, 676 F.2d at 958-59.

It is undisputed that Restrepo failed to complete a SF 95, but via her various mailings describing the incident and the injuries she sustained, she did provide Defendant with "other written notification of the incident."  At issue is whether Restrepo'sb various mailings satisfy the presentment requirement despite not containing a claim for monetary damages in a sum certain. Restrepo does not dispute her failure to request a sum certain; rather, Restrepo argues that because she was in Defendant's custody and Defendant was aware of her claim through her participation in the administrative and criminal investigations, Defendant could have surmised the specific amount of her monetary damages.  In support of her argument, Restrepo cites to Blue v. United States, 567 F. Supp. 394 (D. Conn. 1983) and Bernard v. Calejo, 17 F. Supp.2d 1311 (S.D. 1998) for the proposition that plaintiff's failure to submit a claim for monetary damages in a "sum certain" does not require dismissal of the complaint where the plaintiff is in defendant's custody and defendant has information from which it can assess the nature and value of plaintiff's claim for purposes of potential settlement.  The Court agrees.  As stated above, the purpose of the presentment requirement is to provide the relevant federal agency with notice and an opportunity to settle the administrative tort claim.  Tucker, 676 F.2d at 958-59.  In cases, such as Restrepo's, where the injuries claimed are intangible, inclusion of a sum certain would merely represent an arbitrary figure and would not serve the purpose of settlement.  Indeed, Restrepo's

co-plaintiffs, Yates and Colon, claimed damages in specific monetary amounts, yet their cases were not settled.  Defendant was indisputably aware of the claims of all three as all three women participated in the administrative and criminal proceedings; thus, Defendant's evaluation of whether settlement was in its interest was not hampered by Restrepo's general, rather than specific, claim for monetary damages.  As such, Defendant's Motion is denied.

### 3.      All Plaintiffs

Although Defendant does not argue for dismissal of Plaintiffs' <u>Bivens</u> claims, to the extent Plaintiffs' claims are asserted against the federal government or any of its agencies, the Court must dismiss these claims for lack of a justiciable controversy.[3]  Under Article III of the Constitution, a federal court may exercise jurisdiction only where there is an actual case or controversy to be decided.  <u>SEIU Employees Int'l Union, Local 3 v. Municipality of Mt. Leb.</u>, 446 F.3d 419, 422 (3d Cir. 2006); <u>1st Westco Corp. v. School Dist.</u>, 6 F.3d 108, 113 (3d Cir. Pa. 1993) (citing <u>Golden v. Zwickler</u>, 394 U.S. 103 (1969)).  For a justiciable controversy to exist, the court must be in a position to grant effective relief to the plaintiff.   <u>Salvation Army v. Department of Community Affairs</u>, 919 F.2d 183, 193 (3d Cir. 1990) (citing <u>United States Parole Commission v. Geraghty</u>, 445 U.S. 388, 395-97 (1980)); <u>see also</u> <u>Flast v. Cohen</u>, 392 U.S. 83, 95 (1968) (stating that Article III's case-or-controversy limitation restricts "the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process").  <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971) established that a victim of a constitutional violation by a federal official

---

[3] Plaintiffs' Complaint mistakenly asserts separate counts for an Eight Amendment violation (Count Four) and <u>Bivens</u> claim (Count Five).   <u>Bivens</u> does not give rise to a separate claim; it provides the vehicle for a claim to recover damages for an alleged constitutional violation.  <u>See, e.g.</u>, <u>F.D.I.C. v. Meyer</u>, 510 U.S. 471, 483-86 (1994); <u>Carlson v. Green</u>, 446 U.S. 14, 19-20 (1980); <u>Muhammad v. Carlson</u>, 739 F.2d 122, 125 (3d Cir. 1984).

may invoke the general federal question jurisdiction of a district court directly under the Constitution to recover damages against the responsible federal official.  F.D.I.C. v. Meyer, 510 U.S. 471, 483-86 (1994); Muhammad v. Carlson, 739 F.2d 122, 122-123 (3d Cir. 1984); see also Carlson v. Green, 446 U.S. 14, 19-20 (1980) (holding that plaintiff could assert a Bivens action against individual federal officials for an alleged Eighth Amendment violation even though the allegations could support an FTCA claim against the federal government); Bivens, 403 U.S. at 392 (recognizing an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights).  While a plaintiff may assert a Bivens claim against individual federal officials acting in their individual capacities, a plaintiff may not bring a Bivens claim against federal officials acting in their official capacities nor the federal government nor any of its constituent agencies.  Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 72 (2001); FDIC v. Meyer, 510 U.S. 471, 485-86 & n.11 (1994); Jaffee v. United States, 592 F.2d 712, 717 (3d Cir. 1979); Webb v. Desan, 250 Fed. Appx. 468, 471 (3d Cir. Pa. 2007).  Here, Plaintiffs assert Bivens claims against all defendants.  Plaintiff's Complaint at 11-12.  To the extent, Plaintiffs assert their Bivens claims against the federal government, the BOP, or BOP employees acting in their official capacities, those claims are dismissed for lack of a justiciable controversy.

## CONCLUSION

For the foregoing reasons, this Court will deny Defendant's Motion for Summary Judgment, and dismiss Plaintiffs' Bivens claims against Defendant.  An appropriate order follows.